IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SANDISK CORP.,                                    OPINION and ORDER

               Plaintiff,                            3:07-cv-00605-bbc

      v.

PHISON ELECTRONICS CORP.,
SILICON MOTION TECHNOLOGY
CORP., SILICON MOTION, INC.
(TAIWAN), SILICON MOTION, INC.
(CALIFORNIA), SILICON MOTION
INTERNATIONAL, INC., SYNERGISTIC
SALES, INC., USBEST TECHNOLOGY,
INC., SKYMEDI CORP., ZOTEK
ELECTRONIC CO., LTD., ZODATA
TECHNOLOGY LTD., INFOTECH
LOGISTIC LLC, POWER QUOTIENT
INTERNATIONAL CO., LTD, PQI CORP.,
PNY TECHNOLOGIES, INC., KINGSTON
TECHNOLOGY CO., INC., KINGSTON
TECHNOLOGY CORP., PAYTON
TECHNOLOGY CORP., MEMOSUN, INC.,
BUFFALO, INC., MELCO HOLDINGS, INC.,
BUFFALO TECHNOLOGY (USA) INC.,
VERBATIM CORP., TRANSCEND
INFORMATION INC. (CALIFORNIA, U.S.A.),
TRANSCEND INFORMATION MARYLAND,
INC., A-DATA TECHNOLOGY CO., LTD.,
A-DATA TECHNOLOGY (USA) CO., LTD.,
APACER TECHNOLOGY, INC., APACER
MEMORY AMERICA, INC., ACER, INC.,

1

BEHAVIOR TECH COMPUTER USA CORP.,
DANE-ELEC MEMORY S.A., and DANE-ELEC
CORP., USA,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SANDISK CORP.,                                 OPINION and ORDER

                Plaintiff,                      3:07-cv-00607-bbc

         v.

PHISON ELECTRONICS CORP.,
SILICON MOTION TECHNOLOGY
CORP., SILICON MOTION, INC.
(TAIWAN), SILICON MOTION, INC.
(CALIFORNIA), SILICON MOTION
INTERNATIONAL, INC., SYNERGISTIC
SALES, INC., USBEST TECHNOLOGY,
INC., SKYMEDI CORP., CHIPSBRAND
MICROELECTRONICS (HK) CO. LTD.,
CHIPSBANK TECHNOLOGY (SHENZHEN)
CO., LTD., CHIPSBANK
MICROELECTRONICS CO., LTD., ZOTEK
ELECTRONIC CO., LTD., ZODATA
TECHNOLOGY LTD., INFOTECH
LOGISTIC LLC, POWER QUOTIENT
INTERNATIONAL CO., LTD, PQI CORP.,
PNY TECHNOLOGIES, INC., KINGSTON
TECHNOLOGY CO., INC., KINGSTON
TECHNOLOGY CORP., PAYTON
TECHNOLOGY CORP., MEMOSUN, INC.,
BUFFALO, INC., MELCO HOLDINGS, INC.,
BUFFALO TECHNOLOGY (USA) INC.,
VERBATIM CORP., TRANSCEND

INFORMATION INC. (CALIFORNIA, U.S.A.),
TRANSCEND INFORMATION MARYLAND,
INC., IMATION CORP., IMATION
ENTERPRISES CORP., MEMOREX
PRODUCTS, INC., ADD-ON COMPUTER
PERIPHERALS, INC., ADD-ON COMPUTER
PERIPHERALS, LLC, ADD-ON TECHNOLOGY
CO., A-DATA TECHNOLOGY CO., LTD.,
A-DATA TECHNOLOGY (USA) CO., LTD.,
APACER TECHNOLOGY, INC., APACER
MEMORY AMERICA, INC., ACER, INC.,
BEHAVIOR TECH COMPUTER USA CORP.,
CORSAIR MEMORY, INC., DANE-ELEC
MEMORY S.A., DANE-ELEC CORP., USA,
EDGE TECH CORP., INTERACTIVE MEDIA
CORP., LG ELECTRONICS, INC., LG
ELECTRONICS U.S.A., INC., TSR SILICON
RESOURCES, INC. and WELLDONE CO.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Recently, plaintiff filed two patent infringement lawsuits in this court. Plaintiff

alleges infringement of two patents in Case No. 3:07-cv-00605-bbc and five patents in Case

No. 3:07-cv-00607-bbc. The two cases involve many of the same defendants and all seven

patents asserted relate to flash memory technology. Case No. 607 has been stayed because

the five patents asserted in that case are the subject of a proceeding before the International

Trade Commission. Case No. 3:07-cv-00607-bbc, Order, dkt. #118. Now before the court

are various defendants' motions to stay Case No. 605 pursuant to 28 U.S.C. § 1659 and this

court's inherent power and defendants' motions to consolidate Cases Nos. 605 and 607 pursuant to Rule 42 of the Federal Rules of Civil Procedure.

Because the patents asserted in Case No. 605 are different from those involved in Case No. 607 and now before the International Trade Commission, § 1659 does not require that Case No. 605 be stayed. However, because the issues in both cases overlap substantially, I will stay Case No. 605 and consolidate Cases Nos. 605 and 607 pursuant to this court's inherent powers.

I find the following facts to be material and undisputed.

FACTS

A.  Flash Memory Industry

Plaintiff has established itself as the leading company in the flash memory industry. Currently, it is one of the world's largest suppliers of flash memory products. However, plaintiff has come to face increasingly stiff competition from defendants, many of whom sell products that compete directly with plaintiff's products. Competitive pricing pressures have forced the prices down on plaintiff's flash memory products. Last year alone, plaintiff reduced its average selling price by 68% per megabyte. Moreover, defendants have steadily increased their share of the flash memory market. For example, defendant Kingston nearly doubled its market share in the United States within the past year.

4

B.  Proceedings Before this Court

On October 23, 2007, plaintiff SanDisk Corp. filed two complaints in this court, Cases Nos. 3:07-cv-605-bbc and 3:07-cv-607-bbc.  Case No. 605 alleges infringement of U.S. Patent Nos. 6,149,316 (the '316 patent) and 6,757,842 (the '842 patent).  Case No. 607 alleges infringement of U.S. Patent Nos. 6,426,893 (the '893 patent), 5,719,808 (the '808 patent), 6,763,424 (the '424 patent), 6,947,332 (the '332 patent) and 7,137,011 (the '011 patent).  Both cases assert that a variety of defendants manufactured or distributed products known as "flash memory products" such as "flash drives," CompactFlash memory cards, MMC memory cards and media players.  Many of the same defendants and products are common to both actions.

Certain patents involved in Cases Nos. 605 and 607 share a prosecution history.  U.S. patent application serial number 07/337,566 (the '566 application) was filed on April 13, 1989.  A restriction requirement issued in the '566 application on July 15, 1991 separated four groups of claims.  Subsequently, the applicant filed two divisional patent applications, serial number 07/963,838, from which the '316 and '842 patents at issue in Case No. 605 resulted, and 07/963,851, from which the '808 patent at issue in Case No. 607 resulted.  As a result, the '316, '842 and '808 patents share a specification and some prior art.  In addition, the three patents share certain claim terms.  The most prominent example of this is the term "erasable together," which appears in independent claims 1, 5, 11, 16 and 23 of

5

the '808 patent, independent claims 1, 53, 67 and 99 of the '316 patent and independent claims 1, 10, 21, 31, 40, 47 and 61 of the '842 patent.

The '316 and '842 patents claim a priority date of April 13, 1989 and will expire April 13, 2009.

### C. Proceeding Before the International Trade Commission

On October 23, 2007, plaintiff SanDisk Corp. filed a complaint (Investigation No. 337-TA-2571) with the United States International Trade Commission pursuant to Section 337 of the Tariff Act of 1930.  That complaint alleges infringement of the same five patents at issue in Case No. 607, which has been stayed.  The target date for completion of the commission's investigation is March 12, 2009.  However, certain respondents in the proceeding have filed a motion to extend the target date until June 13, 2009.  An appeal of the case would likely take an additional nine months or more to resolve.

### DISCUSSION

Various defendants seek a stay of Case No. 605 pursuant to 28 U.S.C. § 1639 or this court's inherent power to issue a stay.  In addition, certain defendants have moved to consolidate Cases Nos. 605 and 607.

6

A.  <u>Mandatory Stay</u>

When an alleged infringement occurs through importation, a patentee may bring parallel patent infringement actions before both the district court and the International Trade Commission.  <u>Texas Instruments Inc. v. Tessera, Inc.</u>, 231 F.3d 1325, 1330 (Fed. Cir. 2000).  However, 28 U.S.C. § 1659 includes a mandatory stay provision which limits the timing of such parallel actions.  <u>Fuji Photo Film Co. v. Benun</u>, 463 F.3d 1252, 1256 (Fed. Cir. 2006).  Upon request by a defendant in parallel actions before a district court and the International Trade Commission, the district court must stay its proceedings "with respect to any claim that involves the same issues involved in the proceeding before the commission" until the commission's determination becomes final.  28 U.S.C. § 1659.

The parties disagree about the scope of the mandatory stay provision.  Plaintiff contends that for a claim to "involve the same issues" for the purpose of imposing a stay under § 1659, the claim must involve the same patent.  Defendants contend that claims may "involve the same issues" if they involve patents that are "closely related" and share important factual or legal disputes.  Plaintiff has the better argument.

First, defendants contend that lawsuits sharing "overlapping issues" must be stayed, which would mean that the mandatory stay provision requires stay for claims that involve only *some* of the same issues.  However, the statutory language does not lend itself to such a broad reading, requiring stay only for "any claim that involves *the* same issues."  Moreover,

7

defendants' reading extends the mandatory stay beyond its purpose.  The legislative history of § 1659 shows that the law was enacted to protect importers and producers from *identical* parallel claims.  Congress passed § 1659 to address the unfairness of requiring importers and producers to "defend claims in both the commission and in district court, possibly at the same time, whereas infringement claims against domestic goods can be heard only in district court."  H.R. Rep. No. 103-826(I), at 140, <u>as reprinted in</u> 1994 U.S.C.C.A.N. 3773.  However, Congress has recognized that there may be other claims not requiring stay, even within the same lawsuit.  For those claims, it remains a matter of discretion whether to impose a stay.  When only some claims in an action must be stayed under § 1659, "[t]he district court may use its discretionary authority to stay any other claims in the action before it."  <u>Id.</u> at 141.

Not only did Congress limit § 1659 to "the same issues," but legislative history shows that Congress intended "issues" as patent-specific disputes, listing as examples of "issues" "questions of patent validity, infringement, and any defenses that might be raised in both proceedings."  <u>Id.</u> at 141.

The statutory language and legislative history of § 1659 establish that a stay is required only when parallel claims involve the same issues about the same patent.  Because the patents involved in Case No. 605 are not before the commission, § 1659 does not require a stay in that case.

8

B. <u>Discretionary Stay</u>

Next, defendants have moved for a stay of Case No. 605 pursuant to the court's inherent power to stay cases before it.  It is within the discretion of the court to stay proceedings pending the resolution of other suits.  <u>Cherokee Nation of Oklahoma v. United States</u>, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (citing <u>Landis v. North American Co.</u>, 299 U.S. 248, 254-55 (1936).  "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  <u>Landis</u>, 299 U.S. at 254.

The court's power to stay cases before it is not boundless.  A stay that is so extensive as to be "immoderate" is an abuse of discretion.  <u>Cherokee Nation</u>, 124 F.3d at 1416 (citing <u>Landis</u>, 299 U.S. at 257).  Moreover, if the stay requested is indefinite, the court must "first identify a pressing need for the stay."  <u>Id.</u>

The general test for imposing a stay requires the court to "balance interests favoring a stay against interests frustrated by the action" in light of the "court's paramount obligation to exercise jurisdiction timely in cases properly before it."  <u>Cherokee Nation</u>, 124 F.3d at 1416 (citing <u>Landis</u>, 299 U.S. at 255).

Plaintiff contends that <u>Landis</u> requires that a defendant make out "a clear case of hardship or inequity in being required to go forward" any time a plaintiff can establish that it would be harmed by a delay.  <u>Landis</u>, 299 U.S. at 255.  However, the "hardship"

9

requirement laid out by <u>Landis</u> does not apply so broadly.  First, the relevant quote, in context, suggests the hardship requirement was aimed at stays that would harm parties to the stayed suit or others who are not parties to a parallel proceeding:

> True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. *Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.*

<u>Landis</u>, 299 U.S. at 255 (emphasis added).  In this case, both complaints were filed by plaintiff and all of the defendants in Case No. 605 are also respondents before the commission, so no one but the parties will be affected by a stay.  Second, under plaintiff's reading of <u>Landis</u>, a showing of hardship would be required in every case because a stay will always delay a plaintiff's right to relief.  In that case, the Supreme Court would have had no reason to assert in <u>Landis</u> that hardship must be shown only in cases in which there is a fair possibility of working damage to someone else.  <u>Landis</u>, 299 U.S. at 255.  I conclude that, when a parallel proceeding serves as the basis for a stay and the only potential "damage worked" is to parties to both proceedings, there is no need for a party requesting a stay to make a special showing of hardship under <u>Landis</u>.

Thus, I turn to the general test for imposing a stay laid out in <u>Cherokee Nation</u>.  The first question to ask is whether the stay requested is "indefinite."  It is not.  As plaintiff acknowledges, a target date for completion of the commission's investigation has been set

10

at March 12, 2009 and may be extended to as late as June 13, 2009.  With a date certain set for completion of the commission's investigation, a stay until its resolution is not indefinite.  Therefore, the court need not identify a "pressing need."

### 1.  Interests favoring a stay

Many of the reasons defendants assert in support of their argument for the imposition of a mandatory stay favor imposing a discretionary stay.  The proceeding before the commission will address infringement of the same products against the same defendants in Case No. 605.  Moreover, the two patents at issue in this case share prosecution history, a specification, some prior art and certain claim terms such as "erasable together" with one of the five patents at issue before the commission.  The term "erasable together" is repeated in several independent claims of all three patents; there is a reasonable likelihood that it will be an important dispute before both the commissioner and at claim construction before this court.  Finally, several defendants have asserted patent misuse defenses implicating plaintiff's entire flash memory patent portfolio, at issue in both proceedings.  In light of the overlap of products and issues, the cases are likely to overlap substantially in discovery and factual and legal disputes.  To allow this Case No. 605 to proceed while Case No. 607 has been stayed awaiting the commission's investigation would impose a burden on the court and on defendants.

11

Plaintiff has offered an olive branch, proposing a "cross-use" agreement that would allow discovery to be exchanged between the proceedings. Even assuming the parties could iron out an agreement that suited all of them (which they apparently have yet to do), the burden on defendants and the court would not disappear, as many issues would likely still be litigated twice.

Not only would parallel proceedings be burdensome, but waiting for the commission to complete its investigation may help simplify this case. It is true that any decision reached by the International Trade Commission will have no preclusive effect on the district court. Texas Instruments, Inc. v. United States Int'l Trade Comm'n, 851 F.2d 342, 344 (Fed. Cir. 1988); see also Bio-Technology General Corp. v. Genentech, Inc., 80 F.3d 1553, 1564 (Fed. Cir. 1996). However, the record developed in the proceeding before the commission may be used to "expedite proceedings and provide useful information to the court." H.R.Rep. No. 103-826(I), at 142; see also 28 U.S.C. § 1659(b) ("after dissolution of a stay under subsection (a) [as in case number 607], the record of the proceeding before the United States International Trade Commission shall be transmitted to the district court and shall be admissible in the civil action").

2. Interests frustrated by a stay

12

Plaintiff contends that a stay would harm both its right to injunctive relief and its ability to collect a money judgment.  Plaintiff's first argument is that a stay would eliminate its ability to seek a permanent injunction because the commission investigation will last until at least March 2009 and the two patents asserted in Case No. 605 will expire in April 2009. Plaintiff is correct that the stay will effectively foreclose any chance of obtaining permanent injunctive relief.  However, plaintiff's chances at meaningful injunctive relief are already slim because plaintiff waited to file suit until 18 months before expiration of its 1989 patents. Even given the relative speed of this court, if no stay were imposed, plaintiff would probably not receive an injunction for more than one or two months, and then only if nothing delays the proceedings.  This case involves dozens of international defendants, so delays are likely. Plaintiff concedes that it waited to bring suit until the costs of litigation were "warranted." Even if plaintiff had legitimate business reasons for its delay, neither the court nor the defendants have a duty to accommodate plaintiff's desire to squeeze what little injunctive value remains from its patents.

Next, plaintiff contends that it will be harmed by the delay in its ability to collect money damages from defendants because the market is fast-changing and highly competitive and some defendants could become insolvent.  Although plaintiff demonstrates that its market position has declined, it maintains that it remains a strong competitor in the market, not a party that faces a short-term "do or die" situation.  To the extent plaintiff hoped to

13

point to its harm from the chance that some defendants could become insolvent, it has provided nothing more than speculation.  Plaintiff's only real "injury" is that it will have to wait for any money damages, which is always the case when a stay is imposed.

3.  Timely exercise of jurisdiction

The final step is to balance these competing interests in light of the court's duty to exercise timely jurisdiction over its cases.  Cherokee Nation, 124 F.3d at 1416.  Plaintiff contends the stay requested in this case, which may last as long as 18 months, would be inconsistent with this duty.  However, an 18-month stay in a complex patent infringement case involving dozens of international defendants is hardly an abandonment of "timely" jurisdiction, particularly in light of this court's relative speed.

Indeed, Congress anticipated the imposition of stays in cases such as this one. Recognizing that not every claim before a court will require stay under 28 U.S.C. § 1659, Congress stated, "The district court may use its discretionary authority to stay any other claims in the action before it."   H.R. Rep. No. 103-826(I), at 141, as reprinted in 1994 U.S.C.C.A.N. 3773.

In balancing these considerations, I conclude that a stay is appropriate in Case No. 605.  To ask a large corporation such as plaintiff to wait for money damages, even as long as 18 months, so that the dozens of international defendants and the court can address

14

complex, multi-patent litigation once instead of twice is hardly "immoderate."  Therefore, I will grant defendants' motions and stay this case until the related proceeding before the International Trade Commission has been resolved.


C.  <u>Consolidation</u>

Under Rule 42 of the Federal Rules of Civil Procedure, a court may consolidate separate "actions involving a common question of law or fact" pending before it.  Fed. R. Civ. P. 42(a).

Certain defendants have moved for consolidation this case with Case No. 607, contending that the cases present common questions of law and consolidation would result in judicial economy.   It is within the court's broad managerial discretion to prevent "unnecessary duplication of effort in related cases" through consolidation or other means. <u>E.E.O.C. v. G-K-G, Inc.</u>, 39 F.3d 740, 745 (7th Cir. 1994) (citations omitted).

Both cases present several common questions of law or fact.  The cases involve allegations of infringement against the same products, share prosecution history and  prior art and involve at least one prominent claim term, "erasable together."  Related issues will arise about the workings of defendants' products in both cases, and defenses of invalidity and patent misuse are likely to rest on issues common to both cases.

In light of the overlap between the cases, it would benefit the court and the parties

to hear these issues together, both during claim construction and at trial. Therefore, defendants' motion for consolidation will be granted.

ORDER

IT IS ORDERED that

1.  The motions of defendants Kingston Technology Co., Inc., Kingston Technology Corp., Payton Technology Corp., Memosun, Inc. and Phison Electronics Corp. and defendants A-Data Technology Co. Ltd., A-Data Technology (USA) Co. LTD., USBest Technology Inc., PNY Technologies, Inc., Power Quotient International Co., Ltd., PQI Corp. and Infotech Logistic LLC to stay Case No. 3:07-cv-00605-bbc are GRANTED and the case is STAYED in its entirety with respect to all parties until the plaintiff's proceedings before the International Trade Commission for infringement of the five patents at issue in Case No. 3:07-cv-00607-bbc (Inv. No. 337-TA-2571) become final.

2.  The motion of defendants Kingston Technology Co., Inc., Kingston Technology Corp., Payton Technology Corp., Memosun, Inc. and Phison Electronics Corp. to consolidate Cases Nos. 3:07-cv-00605-bbc and 3:07-cv-00607-bbc is GRANTED.

FURTHER IT IS ORDERED that counsel for the moving defendants is to advise the court of the progress of the proceedings before the International Trade Commission no later

16

than March 1, 2008 and every other month thereafter, or earlier, if the commission issues

a determination by then.

Entered this 28th day of January, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

17